UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE PLAZA BEACH MOTEL, LLC, a
Florida limited liability company;
UNDERTOW BEACH BAR – ST. PETE BEACH,
INC., a Florida corporation,

                                             CASE NO:

    Plaintiffs,

v.

CITY OF ST. PETE BEACH,
FLORIDA, a municipality,

    Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, THE PLAZA BEACH MOTEL, LLC ("Plaza Beach") and UNDERTOW BEACH BAR – ST. PETE BEACH, INC. ("Undertow"), collectively "Plaintiffs", sue the CITY OF ST. PETE BEACH, FLORIDA ("City"), and allege:

### INTRODUCTION

In order to obtain the same police protection from trespassing enjoyed by any other landowner, Plaintiffs deemed it necessary to post "Private Property," "No Trespassing" and similar signs on their beachfront property. Hostile to the messages being conveyed, the City adopted Ordinance 2026-11 prohibiting Plaintiffs and other beachfront owners in the City from posting signs on their property within 50 feet of the water or the mean high water line, whichever is more restrictive. The same ordinance, however, allows state and local governments,

1

including the City, to post signs and authorize others to post signs on these portions of Plaintiffs' properties. This measure, taken with the ultimate aim of appropriating Plaintiffs' private property for public use, constitutes a viewpoint-based restriction on speech protected by the First Amendment without a sufficient justification. Moreover, the ordinance greatly restricts signs on other portions of Plaintiffs' private property, imposes an unconstitutional permit requirement, and fails to leave ample avenues for expression by Plaintiffs on their own properties. Finally, because Florida law not only authorizes but requires the posting of land, the ordinance is preempted under state law.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 for violation of their rights under the First and Fourteenth Amendments to the United States Constitution.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiffs' state-law preemption claim pursuant to 28 U.S.C. § 1367.

4. The City is a municipality organized under the laws of Florida and located in Pinellas County.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to this action occurred within this District.

2

**FACTS**

6.    Plaintiffs are family owned and operated businesses that have served residents and visitors in the City since the 1980s-early 90s.

7.    Plaza Beach, located at 4506 Gulf Boulevard, St. Pete Beach, Florida, is a hotel.

8.    Undertow, located at 3850 Gulf Boulevard, St. Pete Beach, Florida, is a beach bar.

9.    Plaintiffs each own property that extends to the waters of the Gulf of Mexico as its western boundary. Plaintiffs each obtained a mean high water line (MHWL) survey depicting the westerly boundary of their property and submitted same to the State of Florida for approval.

10.    After surveying their land, Plaintiffs posted, and intend to continue posting, "Private-Property", "No Trespassing", and similar boundary signs and markers on their privately-owned beachfront property.

11.    Plaintiffs' signs constitute protected speech.

*The City's Prior Attempted Land Grab of Private Beachfront Property*

12.    In 2018, the City adopted Ordinance 2018-07 attempting to claim a right by custom for the public to use private property along the beach.

13.    Ordinance 2018-07 sought to confirm and protect claimed customary use rights for public beach access over private lands, while restricting signs, markers, and warnings stating or implying that beach property was private or that public access rights did not exist.

14.     After being sued in this Court for violating rights guaranteed by the First, Fifth and Fourteenth Amendments, the City repealed the 2018 customary-use ordinance.

15.     Subsequent to the repeal, public officials in the City have repeatedly discussed at public meetings ways for the City to once again claim public use of private beachfront property.

*The City's Targeted Pre-Ordinance Effort to Remove Private-Property Signs*

16.     In or around January 2025, Undertow followed the state law process for surveying the boundary between its private upland and state-owned submerged lands below MHWL. The State of Florida, Department of Environmental Protection, approved the survey.

17.     After experiencing trespass, enforcement, and liability concerns on its beachfront property, Undertow placed signs in or around October 2025 to mark its private property and notify others of the boundary locations.

18.     Plaza Beach experienced similar trespass, enforcement, and liability concerns on its beachfront property, obtained its own survey, and similarly placed signs to identify its private property and notify others of the boundary locations.

19.     On or around October 15, 2025, City code enforcement contacted Undertow to request a meeting about removing the signs from the beach because the City did not want the signs there.

4

20. At that time, the City did not specifically advance any safety concern with Undertow's signs and instead focused on the presence and proliferation of private-property signage on the beach.

21. Undertow subsequently modified its signage to comply with the City's requirement that signs be limited to four square feet; however, the City's concerns with the signs persisted.

22. In an effort to work cooperatively with the City as a longstanding business in the community, Undertow agreed to attend a meeting with representatives of the City and the Pinellas County Sheriff's office, including the City Manager and several deputies, during which it was clear that the City wanted Undertow's signs removed from the beach.

23. To encourage voluntary removal, the City represented that the Pinellas County Sheriff had changed its policy and would vigorously enforce trespass on Undertow's private beachfront property if Undertow removed the signage.

24. Based on the representations of the City Manager and Sheriff's deputies present that trespassing would be enforced on Undertow's property without the posted signs, Undertow advised that it would voluntarily remove the signs at that time while preserving the right to put them back should the promised enforcement not materialize.

25.    Ordinance 2026-11 now takes away the very right Undertow never gave up: the right to use signage and markers to identify private beachfront property, warn against trespass, and protect its land.

26.    Subsequently, Plaza Beach posted its property. The City took a more confrontational course with the Plaza Beach.

*The Emergency Ordinance and Passage of Ordinance 2026-11*

27.    In or around April 2026, the City declared Plaza Beach's signs an emergency and passed an emergency ordinance to ban them. By declaring an emergency, the City was permitted to adopt a temporary measure with only one meeting and limited notice.

28.    The City adopted Emergency Ordinance 2026-10 creating a new sign restriction on the beach, requiring existing non-governmental signs within the restricted beach area to be removed within seven days, but continuing to authorize governmental signs in the same area. Plaintiffs each pointed out the unconstitutional nature of the City's actions at the meeting.

29.    At the public meeting addressing Emergency Ordinance 2026-10, the public comment and Commission discussion did not center on any documented emergency caused by Plaintiffs' signs but instead focused on aesthetics, tourist perception, customary use, and alleged public rights over private beachfront property.

6

30. Because the emergency measure was expiring, in or around June 2026, the City introduced Ordinance 2026-11 as the permanent amendment to the City's Sign Code.

31. The City's agenda packet for the final reading included an attachment titled "Photo Examples Beach Signs within 50 ft," which included photographs of Plaintiffs' signs as examples of the signs targeted by the ordinance.

32. The photographs depicted no-trespassing signs, private-property signs, and property-boundary markers placed by surveyors exclusively on Plaintiffs' private properties.

33. At the final public meeting, Plaintiffs again pointed out the facial unconstitutionality of the proposed ordinance.

34. Public comment again focused largely on customary use and alleged public beach-access rights, rather than any documented safety incident, obstruction, or emergency caused by Plaintiffs' signs.

35. The City Commission's discussion likewise revealed that the ordinance was directed at aesthetics and public-access concerns, not a genuine emergency involving signs, posts, poles, rebar, or stakes (all of which can be placed by the government).

36. Mayor Tate noted that public pressure for a customary-use carveout had become insurmountable, tying the ordinance directly to the City's desire to treat private beachfront property as open to the public.

37. The City passed Ordinance 2026-11. Exhibit 1, Ordinance 2026-11.

38.     As adopted, Ordinance 2026-11 prohibits signs, stakes, posts, rebar, or poles within 50 feet of the MHWL or visible water line of the Gulf, whichever is more landward, while exempting an official governmental locational[1] sign, stake, post, rebar, or pole that is posted by, or pursuant to the direction of, the State of Florida or another governmental entity with jurisdiction.

39.     The ordinance therefore removes Plaintiffs' private-property, no-trespassing, and property-boundary signs from the precise location where that message is needed, while allowing the City and government-approved speakers to place signs in the same restricted beachfront area.

40.     Ordinance 2026-11 also reveals its purpose, containing an express provision that nothing in this sign code shall supersede, negate, or infringe upon Florida's customary use doctrine. Thus, a sign advising the public that they are welcome to use Plaintiffs' private land is permitted.

41.     The ordinance also reaches beyond the 50-foot restricted area and broadly regulates all other beach signage by restricting signs to A-frame or sandwich-board signs, imposing onerous permit application requirements (such as the requirement to obtain a mean high water survey approved by the state), limitation on the number of sign per lot (Plaintiffs would qualify for one sign each), limitations on location, and the requirement that the sign be removed at sunset.

42.     In practical effect, these restrictions allow Plaintiffs only one removable A-frame on their private beachfront property (if they remove other

---

[1] "Locational" signs are not defined in the City's code.

8

signs within 300 feet), and only if the City first approves a permit under a scheme that gives City officials control over when, where, and whether Plaintiffs may display speech concerning private-property rights, beach access, and trespass. There is no time limit for the City to act upon the permit application.

43. The ordinance's reliance on the visible water line, in addition to the mean high water line, further makes the restricted area uncertain because the visible water line constantly changes and has no fixed relationship to title, surveyed property boundaries, or the legal mean high water line, which is a multi-year average that must be marked for its accuracy. This requires constant monitoring of the sign by Plaintiffs' employees based upon the tides.

44. Almost immediately after the ordinance was adopted, the City began demanding the removal of signs by Plaza Beach.

45. Plaintiffs intend to maintain, replace, and post private-property, no-trespassing, and property-boundary signs on their beachfront property, but face enforcement if they do so without complying with the challenged restrictions.

46. All conditions precedent to the bringing of this action have occurred, have been satisfied, or have otherwise been waived

### COUNT I – VIOLATION OF FIRST AMENDMENT

47. Plaintiffs re-allege paragraphs 1 through 46 as set forth above.

48. Plaintiffs challenge subsection 26.14(w) of the City's Sign Code, facially and as applied, including its beach-buffer restriction, governmental-sign

exception, A-frame and sandwich-board restrictions, and beach-sign permitting scheme.

49.    Plaintiffs have standing because they own or operate beachfront property, have posted private-property, no-trespassing, and property-boundary signs, intend to maintain and replace those signs, intend to post additional signs on their deeded beachfront property, and face enforcement under the challenged ordinance if they do so.

50.    The City's Sign Code, as amended by Ordinance 2026-11, impermissibly regulates speech based on content, speaker, and viewpoint.

51.    Government regulation of speech is content based if it applies based on the topic discussed or the idea or message expressed.

52.    Subsection 26.14(w) expressly permits signs with government speech or government-endorsed speech on Plaintiffs' private properties while prohibiting all signs with speech from Plaintiffs.

53.    Thus, the ordinance, on its face, favors governmental and government-approved speech while disfavoring Plaintiffs' speech.

54.    Because the challenged ordinance regulates speech based on content, speaker, and viewpoint, it is subject to strict scrutiny.

55.    The ordinance cannot survive strict scrutiny because the City has no compelling governmental interest in suppressing only landowners' speech on their private property while permitting itself and others to speak.  Clearly, the ordinance is not narrowly tailored to any legitimate safety interest.

56.    Alternatively, even if subsection 26.14(w) was facially neutral, it violates the First Amendment because it was adopted and enforced with discriminatory intent and effect to burden Plaintiffs' protected speech.

57.    The City's history, agenda materials, enforcement conduct, Commissioner comments, and customary-use carveout show that the ordinance was targeted at Plaintiffs' private-property and no-trespassing messages. The fact that the City reserved unto itself the right to approve other signs on Plaintiffs' properties demonstrates that physical hazards are of no concern to the City.  In fact, it is hard to fathom how or why signs on Plaintiffs' property would cause injury to persons, impact public safety, interfere with emergency operations or beach management activities (unspecified), or pose any unique harms not posed by posts or even signs placed anywhere else within the City, which are not being singled out for curtailment.

58.    A facially neutral regulation adopted or enforced to suppress disfavored speech because of its message is likewise subject to strict scrutiny.

59.    The City cannot satisfy strict scrutiny because the ordinance burdens Plaintiffs' speech concerning a public controversy over private beachfront property without any compelling justification and without narrow tailoring.

60.    Finally, even if analyzed as a content-neutral time, place, and manner regulation, the ordinance still violates the First Amendment because it burdens substantially more speech than necessary and fails to leave open adequate alternative channels for Plaintiffs' expression.

11

61.    The A-frame and sandwich-board provisions are not adequate alternative channels of communication as they are costly to permit and maintain, unduly limited in spacing and number, and render it impossible for Plaintiffs to mark more than one boundary of their land.

62.    The beach-sign permitting scheme also operates as an unconstitutional prior restraint on speech.

63.    A prior restraint on speech exists "when the government can deny access to a forum for expression before the expression occurs." *United States v. Frandsen*, 212 F.3d 1231, 1236–37 (11th Cir. 2000). A sign permitting scheme is a prior restraint. *Café Erotica of Florida, Inc. v. St. Johns Cnty.*, 360 F.3d 1274, 1282 (11th Cir. 2004).

64.    Government discretion in speech permitting is allowed, if at all, only where constrained by narrow, objective, and definite standards, and prior restraints must avoid unbridled discretion and ensure that permitting decisions are made within a specified time period. *Café Erotica of Florida, Inc.*, 360 F.3d at 1282, 1284.

65.    The City's beach-sign permitting scheme lacks clear and definite objective criteria, vests unbridled discretion in City officials, imposes no timeframe for a decision, and provides no adequate mechanism for prompt review of a denial.

66.    Subsection 26.14(w) cannot be constitutionally salvaged through severance of any part of it.

67.    Even assuming the governmental-sign exception or customary-use carveout could be severed, and even assuming the City would have enacted the ordinance without those provisions, the remaining ordinance would still violate the First Amendment because it prohibits Plaintiffs' speech where it is necessary and effective, fails to leave open adequate alternative channels of communication, and imposes an unconstitutional permitting scheme on other beach signage.

68.    Accordingly, subsection 26.14(w) violates Plaintiffs' rights under the First Amendment to the United States Constitution, both facially and as applied.

69.    The City's ordinance cannot be effectively salvaged by severing the governmental exception or customary use carveout as those provisions constitute central features to the City's regulatory scheme and severance would require the Court to essentially rewrite the sign code and establish a new code never intended.

70.    Alternatively, the ordinance would still prohibit Plaintiffs from displaying private-property, no-trespassing, and property-boundary signs in the precise location where that speech is necessary and effective, fail to leave open adequate alternative channels of communication, and impose an unconstitutional permitting scheme on other beach signage.

WHEREFORE, Plaintiffs demand judgment against the City for declaratory relief finding that the beach-sign permitting scheme in subsection 26.14(w) is unconstitutional under the First and Fourteenth Amendments to the U.S. Constitution, ordering temporary and permanent injunctive relief prohibiting the City from enforcing the ordinance, awarding compensatory or nominal damages,

13

awarding attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and granting all other relief that is just and proper.

## COUNT II –DECLARATORY RELIEF
(State Law Preemption)

71.  Plaintiffs re-allege paragraphs 1 through 46 as set forth above.

72.  Florida Statutes section 810.09 makes notice central to enforcement of trespass on property other than a structure or conveyance, including notice by actual communication, posting, fencing, cultivation, or other legally recognized means.

73.  Plaintiffs have standing to bring this claim because they rely on signs, markers, posts, and similar notices to communicate the boundaries of their properties and that unauthorized entry is prohibited.

74.  The challenged ordinance prohibits, relocates, or subjects to discretionary permitting the very signs and markers Plaintiffs use to provide notice and preserve their ability to enforce trespass law on their property.

75.  To the extent the ordinance prohibits or materially burdens Plaintiffs' ability to post private-property and no-trespassing notice on their own land, it conflicts with Florida's trespass-notice framework and is preempted or otherwise invalid under Florida law.

76.  An actual controversy exists between Plaintiffs and the City regarding the validity and enforceability of the ordinance as applied to Plaintiffs' trespass-notice signs and markers.

14

WHEREFORE, Plaintiffs demand judgment declaring that the challenged ordinance is invalid under state law as it is preempted by, or materially burdens Plaintiffs' rights under Florida's trespass-notice law, temporarily and permanently enjoining the City from enforcing the ordinance against Plaintiffs' trespass-notice signs and markers, awarding costs and attorney's fees under section 57.112 of Florida Statutes, and granting all other relief that is just and proper.

DATED: July 6, 2026

Respectfully submitted,

/s/ Timothy W. Weber

WEBER, CRABB & WEIN, P.A.
Timothy W. Weber, Esq. (FBN 86789)
Alyssa Gagnon, Esq. (FBN 1070458)
timothy.weber@webercrabb.com
alyssa.gagnon@webercrabb.com
Secondary lisa.willis@webercrabb.com
5453 Central Avenue
St. Petersburg, Florida 33710
(t): 727-828-9919
(f): 727-828-9924
*Attorneys for Plaintiffs*

15