UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE PLAZA BEACH MOTEL, LLC, a Florida limited liability company; UNDERTOW BEACH BAR – ST. PETE BEACH, INC., a Florida corporation,

Plaintiffs,

v. Case No: 8:26-cv-01936-JLB-LSG

CITY OF ST. PETE BEACH, FLORIDA, a municipality,

Defendant.

_____________________________________/

**ORDER**

This matter is before the Court on Plaintiffs Plaza Beach Motel, LLC ("Plaza") and Undertow Beach Bar – St. Pete Beach, Inc.'s ("Undertow") (collectively, the "Plaintiffs") Motion for Preliminary Injunction. (Doc. 15). Plaintiffs seek to enjoin the City of St. Pete Beach, Florida ("the City") from enforcing subsection 26.14(w) of the City's Sign Code, including the beach-sign prohibition, government-sign exemption, removal demands, and beach-sign permitting scheme enacted by St. Pete Beach Ordinance 2026–11. (*Id.*).

On July 6, 2026, Plaintiffs filed this lawsuit against the City, alleging a violation of their First Amendment rights (Count I) and preemption of subsection

26.14(w) under Florida state law (Count II). (Doc. 1). The Plaintiffs now seek a preliminary injunction. (Doc. 15).

For the reasons explained below, the Court concludes that Plaintiffs have not demonstrated a likelihood of irreparable injury in the absence of a preliminary injunction. Accordingly, Plaintiffs' Motion for Preliminary Injunction (Doc. 15) is due to be **DENIED**.

## BACKGROUND[1]

The Plaintiffs are owners of beachfront property. (Docs. 15-2 at ¶ 4; 15-3 at ¶ 4). Undertow is a beach bar (Doc. 1 at ¶ 8), and Plaza is a hotel. (*Id.* at ¶ 7). Before the commencement of this action, Plaintiffs each obtained a property survey identifying the boundaries of their respective beachfront properties. (Docs. 15-2 at ¶ 4; 15-3 at ¶ 4).

Undertow experienced members of the public entering or remaining on portions of its private beachfront property without Undertow's permission. (Doc. 15-3 at ¶ 5). To notify the public of its property boundaries and discourage further trespass, Undertow displayed "private-property" signs on its beachfront property. (*Id.* at ¶ 6).

On or around October 2025, Undertow had several meetings with the City. (*Id.* at ¶¶ 7–11). The City expressed concerns about Undertow's signage near the water's edge and asked whether Undertow would consider removing those "private-

[1] "[A]ll of the well-pleaded allegations of [a] complaint and uncontroverted affidavits filed in support of [a] motion for a preliminary injunction are taken as true." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976). Accordingly, this background section relies on the facts recited in the Complaint (Doc. 1) and Plaintiffs' declarations (Docs. 15-2, 15-3).

property" signs if the City made law enforcement available to enforce trespass on Undertow's property. (*Id.* at ¶¶ 8–11). Based on those representations, Undertow voluntarily removed the signs from its property. (*Id.* at ¶ 14).

Similarly, Plaza also encountered members of the public entering or remaining on portions of its private beachfront property without Plaza's permission. (Doc. 15-2 at ¶ 5). Like Undertow, Plaza chose to address this issue by posting signs to identify the boundaries of its property and to discourage further trespass on its private property. (*Id.* at ¶ 6).

In June 2026, the City enacted Ordinance 2026–11, which included subsection 26.14(w). (*Id.* at ¶ 12). Subsection 26.14(w) prohibits the installation of temporary or permanent signs within 50 feet of the Gulf's water line unless the signs are posted by a governmental entity as follows:

> No temporary, portable, or permanent sign, stake, post, rebar or pole shall be installed, placed or maintained within 50 feet of the mean high water line (MWHL) and within 50 feet of visible water line of the Gulf whichever is more landward at any time unless the sign, stake, post, rebar or pole that is posted by, or pursuant to the direction of, the State of Florida or another governmental entity with jurisdiction. Any sign, stake, post, rebar or pole in conflict with this prohibition shall be relocated to an allowable location.

(Doc. 15-1 at 3). Outside the 50-foot restricted area, subsection 26.14(w) dictates that signs are placed on "a portable A-frame or sandwich board that is no more than five (5) feet in height, eight (8) square footage in total sign face area" and "removed at sunset and not replaced until sunrise each day." (*Id.*). The subsection also "require[s] a permit and submittal of a beach signage permit application that

includes the property deed, title history, title insurance, and survey depicting sign location, property boundaries and the mean high water line." (*Id.*).

Unlike Undertow, Plaza had *not* voluntarily removed its signs before the City adopted subsection 26.14(w). (*See* Doc. 15-2). Thus, in August 2026, the City issued a notice of violation to Plaza, citing noncompliance with subsection 26.14(w) and another unchallenged provision of the City Sign Code, requiring that real property be free of nuisances or hazards. (*Id.* at 7). The notice instructed Plaza to remove noncompliant signage. (*Id.*).

After this notice of violation, Plaza received notice of a hearing scheduled for September 14, 2026. (*Id.* at 10). At this hearing, a Special Magistrate would decide whether to impose fines for Plaza's alleged Sign Code violations, and Plaza would have the opportunity "to present [its] side of the case." (*Id.*). Plaza and the City then agreed to continue that hearing until October 12, 2026. (Doc. 19-1 at 1).

Plaza has since removed the signage at issue. (Doc. 15-2 at ¶ 28). Based on the information provided to the Court, neither Plaintiff has signs posted in violation of the City's ordinances.

**LEGAL STANDARD**

The Court may grant a preliminary injunction only if the movant shows that (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party;

and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted).

"The grant or denial of a preliminary injunction is a decision within the sound discretion of the district court." *Revette v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 740 F.2d 892, 893 (11th Cir. 1984) (citation omitted). The Court will not grant a preliminary injunction "unless the movant clearly establishe[s] the 'burden of persuasion' as each of the four prerequisites." *Siegel*, 234 F.3d at 1176 (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). If the movant fails to demonstrate one of the four prerequisites, the Court need not analyze the others. *See Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001) (citation omitted).

A preliminary injunction is an "extraordinary and drastic remedy.'" *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting *Siegel*, 234 F.3d at 1176). Its "chief function . . . is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990) (citation omitted).

## DISCUSSION

Plaintiffs move for a preliminary injunction to enjoin the City from enforcing subsection 26.14(w). (Doc. 15 at 25). Plaintiffs argue that they are likely to succeed on the merits of their First Amendment and state law preemption claims. (*Id.* at 8–20). The Plaintiffs also claim that subsection 26.14(w) restricts their ability to erect

signage identifying the boundaries of their properties, thereby irreparably harming their First Amendment rights. (*Id.* at 20–23).

The City responds that Plaintiffs failed to establish a substantial likelihood of success on the merits and irreparable harm. (Doc. 20 at 7–19, 21–22). In arguing that Plaintiffs have failed to demonstrate irreparable harm, the City points to Plaintiffs' lack of urgency and the absence of any final enforcement order against Plaintiffs. (*Id.* at 21–22).

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors*, 896 F.2d at 1285. "The injury must be 'neither remote nor speculative, but actual and imminent.'" *Id.* (citation omitted).

Here, Plaintiffs fail to demonstrate that irreparable injury will imminently result if the Court fails to issue a preliminary injunction. The Court disagrees.

First, Plaintiffs' delay in seeking injunctive relief cuts against a finding that irreparable harm is imminent. Plaintiffs filed this action on July 9, 2026, and moved for preliminary injunction on September 13, 2026. This is three months after the City's passage of the challenged ordinance and one month after the City issued Plaza a notice of violation for posting a sign. Notably, the motion for preliminary injunction relies on the same facts available when the Complaint was filed. *See Wreal, LLC.*, 840 F.3d at 1248 ("A delay in seeking a preliminary injunction of even only a few months . . . militates against a finding of irreparable harm."); *Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni*

*Ass'n, Inc.*, No. 22–14257, 2023 WL 3704912, at *3 (11th Cir. May 30, 2023) (affirming the district court's denial of a preliminary injunction without evidentiary hearing where the motion was filed nearly six months after the complaint and relied on evidence available at the time the action was initiated and offered no explanation for the delay).

Moreover, Plaza agreed to continue its scheduled September 14 code enforcement hearing with the City to October 12, 2026. (Doc 19-1). Plaintiffs' "failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Wreal, LLC*, 840 F.3d at 1248.

Second, the Plaintiffs have not established irreparable injury within a First Amendment context. "The assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction [even] if he shows a likelihood of success on the merits." *Siegel*, 234 F.3d at 1178 (quoting *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983)). Only "'direct penalization, as opposed to incidental inhibition, of First Amendment rights . . . constitutes irreparable injury." *Id.* (quoting *Cate*, 707 F.2d at 1188); *Fla. Preborn Rescue, Inc. v. City of Clearwater*, 161 F.4th 732, 747 (11th Cir. 2025) ("[W]e have held that only 'direct penalization'—as opposed to 'incidental inhibition'—of 'First Amendment rights constitutes irreparable injury.'" (citation omitted)).

Here, Undertow voluntarily removed its signs on or around October 2025, months before the City adopted subsection 26.14(w). (Doc. 15-3 at ¶¶ 7, 11). Undertow does not allege that it has ever been denied a permit or made subject to any fines for noncompliance with subsection 26.14(w). Undertow never replaced its signs after voluntarily removing them before the adoption of subsection 26.14(w), and has never received a notice of violation from the City. (*Id.* at ¶¶ 31–32).

Similarly, Plaza has not been denied a permit or made subject to any fines. (Doc. 15-2). It has received only a notice of violation, citing noncompliance with subsection 26.14(w) and an independent, unchallenged subsection of the City Sign Code. (*Id.* at 7). Plaza does not allege that the City has issued any enforcement order against it. Per the notice of hearing, Plaza maintains the opportunity to "answer these charges and to present [its] side of the case" before the City makes its final decision on enforcement. (*Id.* at 10).

For the foregoing reasons, the Plaintiffs have not demonstrated that direct penalization of their First Amendment rights is imminent in the absence of an injunction. Neither of the Plaintiffs has been subject to any enforcement actions for their speech (posting a sign), and both have the opportunity to either apply for a permit or relocate their signs. These circumstances do not amount to direct penalization of speech. *Cf. Bonita Media Enters., LLC v. Collier Cnty. Code Enf't Bd.*, No. 2:07–CV–411, 2008 WL 423449, at *1, *9 (M.D. Fla. Feb. 13, 2008) (finding direct penalization where the code enforcement board issued an order imposing a fine of $1,000 per sighting of a prohibited sign and requiring plaintiff to pay all

operational costs incurred by the board's prosecution of the case); *Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1329–30, 1335 (M.D. Fla. 2009) (finding direct penalization where the plaintiff had already paid fines and court costs in the amount of $690.00 before being issued a second notice of violation).

As noted, the delayed filing of this motion also bears on this finding. As explained above, Plaintiffs' delay in seeking a preliminary injunction weighs heavily against the finding of irreparable harm. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors*, 896 F.2d at 1285; *see also Yoseph v. Sec'y, Fla. Dept. of Corrs.*, No. 25–10113, 2025 WL 2366445, at *6 (11th Cir. Aug. 14, 2025) ("Although [the plaintiff] contends that such a delay should not have been considered because First Amendment freedoms are involved, he has pointed to no case law from this Court or the Supreme Court holding that a delay in filing suit is an improper consideration when assessing irreparable harm where First Amendment rights are involved.").

Because the Plaintiffs failed to demonstrate a substantial likelihood of irreparable injury, the Court need not consider the other preliminary injunction prerequisites. *See Siegel*, 234 F.3d at 1176 (affirming the denial of a preliminary injunction where the plaintiffs "did not meet their burden of showing at least a substantial likelihood of irreparable injury").

*[intentionally left blank]*

## CONCLUSION

Accordingly, Plaintiffs' Motion for Preliminary Injunction (Doc. 15) is **DENIED**.[2]

**ORDERED** in Tampa, Florida, on October 27, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

[2] The Court's decision at this early stage of the proceedings is narrow and applies the settled legal framework for issuance of the "extraordinary and drastic" remedy sought here. *Wreal, LLC,* 840 F.3d at 1247 (citation omitted). The Court expresses no opinion as to the ultimate disposition of the constitutionality of the challenged ordinance. That said, the Court is hopeful that the City will work closely and amicably with Plaintiffs, and all private property owners for that matter, during its permitting and enforcement processes under the challenged ordinance. The gravamen of Plaintiffs' complaint is clear: the posting of "private property" signs on their own private property puts potential trespassers on notice that they may not travel across private property. That applies on all portions of a property owner's property, whether it is within or beyond 50-feet from the Gulf waters, and both during daylight hours *and* after sunset.